## James W. Rice

### v.

### Fireno L. Millard.

*Husband and Wife—Fraud.*

1. A married woman may give her husband the use of any piece of personal property belonging to her, and the income derived therefrom, without forfeiting it to her husband's creditors. She may also employ her husband as agent to look after and care for her business.

2. Every person must take notice who has the ownership of personal property, where it is intrusted to the hands of another to be cared for.

3. The fact that a person named relied, in giving him credit, upon the presumption that a married man was the owner of certain property belonging to his wife, can cut no figure, no facts appearing, justifying such reliance.

[Opinion filed December 7, 1891.]

APPEAL from the Circuit Court of Lee County; the Hon. JAMES H. CARTWRIGHT, Judge, presiding.

Messrs. JOHN A. ANDRUS and O'BRIEN & O'BRIEN, for appellant.

Mr. JAMES W. WATTS, for appellee.

LACEY, P. J.   This was an action of replevin commenced before a justice of the peace by appellee against appellant, a constable, to recover the possession of four colts and a sulky riding plow, taken by appellant under and by virtue of an execution in favor of John Trostle, a grain dealer, against Dwight R. Millard, the husband of the appellee, issued on a judgment obtained by Trostle against Dwight R. Millard for damages sustained by said Trostle by reason of the failure of Millard to deliver to the former a quantity of oats raised on appellee's farm and sold by Millard to Trostle, July, 1890. The trial in the Circuit Court resulted in a verdict and judgment in favor of appellee.   The only issue tried was whether the property replevied was subject to the execution issued against appellee's husband and levied on as his, now claimed by appellee.   The contention of appellant as stated by his counsel is that the property was subject to levy and sale to satisfy the husband's debts, because appellee and her husband confused their property and rendered it impossible to distinguish it from the husband's property.   The whole, therefore, it is insisted, was liable for his debts; and further, that the alleged agreement between appellee and her husband concerning the operation and cultivation of the farm hereafter mentioned was not made in good faith, but to hinder, delay, and defraud the husband's creditors.   Before considering the

propositions as above stated, it will be necessary to state the circumstances in regard to the appellee and her husband existing for several years prior to the contracting of the debt upon which the judgment in question was based.    Six or seven years prior to the purchase of the farm on which appellee and her husband afterward resided and cultivated, Dwight R. Millard was a tenant thereon, and cultivated it in his own right, and owned a team and other stock, some fourteen or fifteen head of cows and young cattle, but did not increase his stock or horses.    He had also some hogs.    Appellee, in April, 1882, became the purchaser of the farm in her own right with money inherited from her deceased brother's estate, taking the deed in her own name.    From this time appellee was the sole proprietor and owner of the farm.    Her husband, however, had the management, care and supervision of it by an arrangement with his wife, as testified to by both of them and not contradicted by any one.    There was no apparent change in the managing the farm, or the raising the crops upon it.    The agreement was that the husband was to cultivate and manage it, and have the proceeds of the grain, when there was any to sell after feeding the stock, *i. e.*, the small grain and oats; some years there was not enough grain to feed the stock, and they had to buy; but generally the amounts they had to sell would aggregate the sum of $200 to $250, and that, appellee had no claim to, or control over.    She had some stock on the place from time to time which was fed, handled and taken care of by her husband.    The appellee's husband never, so she testified, sold any of her property without her knowledge and consent.    And besides $5,000 inherited from her brother's estate in 1882, about six years prior to this suit she inherited $2,000 in addition from her mother's estate. The husband sold off all his stock that he had on the farm within six months or a year after his wife's purchase of it.    It appears that the wife's title to the colts in controversy was derived as follows :    About the time she purchased the land, her mother gave her a gray horse and she kept him on the farm for a time, when her husband, with her consent, traded him for a gray mare, and the colts in question are the off-

Rice v. Millard.

spring of the gray mare, the appellee paying for the sire of the colts out of her own money, the husband caring for and rearing them off the produce raised on the appellee's farm.

The plow was also purchased with appellee's money, furnished to her husband for that purpose, and has been hers for a couple of years. It appears that appellee was the owner of the farm, and was possessed in her own right of most of the money and property, and that the husband had but very little. These are the substantial facts in the case so far as they need be stated to understand the questions of law involved, or the questions of fact.

There is no evidence that the appellee's husband was ever indebted to any one to any amount, that has not been fully paid, except the judgment in question, or that she was or had been. So far, then, as there was any actual fraud intended by and between appellee and her husband in the manner of carrying on their business, there is not a particle of evidence of it. During all the years the husband and wife occupied the farm, it could not be possible that they were looking forward to the time when this debt of appellant would be contracted, with a view of avoiding its payment by fraudulent means, and no other debts are shown to have existed to which a like charge could apply. And there is nothing in the conduct of appellee and her husband in the long period they occupied the farm to characterize it as fraudulent. They acted, as it appears to us, like any other ordinary husband and wife would have done under like circumstances. Is there anything in their conduct that should stamp it as fraudulent in law, and that would estop appellee in equity from setting up her title to the property in question? In this we think neither the court nor the jury would be justified in holding or finding there was. It will be seen that the articles of personal property which are claimed here, are specific and distinct articles, to which appellee is capable of establishing a clear ownership, unless her title has been forfeited by reason of her husband having used the plow in the one case, and in the other giving his care and attention to the colts and stock which were fed from the produce from appellee's own farm,

under a contract with her husband expressly entered into. The wife has the right under the law to give her husband the use of any piece of personal property, and the income derived therefrom, without forfeiting it to her husband's creditors. She has also a right to employ her husband as agent to look after and care for her business, as appellee did in this case.

This is far from being like a case where a wife furnishes her husband with a sum of money to buy a stock of goods and allows him to buy and sell and trade on it as though it were his own. It might be claimed with nearly equal show of reason, because the husband was allowed to use the wife's farm for his own benefit, it could be taken for his debts. The only difference would be the notice which the record of the deed gives.

It must be remembered on the other hand that every person must take notice who has the ownership of personal property, where it is simply intrusted in the hands of another to be cared for, as was the case here.

The refusal of the court to allow appellant to prove that Trostle, the execution creditor, in contracting his debt relied on the husband of appellee being the owner of the property in question, was proper under the circumstances. There was no evidence to justify him in having such reliance, and besides, even in a proper case, no actual proof of that kind was necessary; it would be presumed from the circumstances of the case. Nor was it error to refuse the proof of the assessment of four horses given in to the assessor by Dwight R. Millard. There was no proof that they were the colts in question. The evidence is the contrary, and the evidence is, appellee was not aware of such assessment.

The objection made that appellee's instructions to the jury were erroneous, in that they failed to submit the question of fraudulent intent between appellee and her husband in allowing him supervision over her property, is not tenable. First, there was no evidence on which to base it, as we have shown, and besides, it was not necessary to give that, even in a proper case, in every instruction. It was given in appellant's instructions. We do not understand from the reading of appellee's

instructions that they assume that appellee was the owner of the property in question. They simply announced an abstract proposition of law, in doing which the appellant was not prejudiced.

The case as it appears from this record was fairly tried, and on the evidence the verdict is correct. The judgment of the court below is affirmed.

*Judgment affirmed.*

Judge CARTWRIGHT, having tried the case in the Circuit Court, took no part in the decision in this court.